[No. B006626. Second Dist., Div. Seven. May 16, 1985.]

CASSIE LEE STARK, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

Counsel

Ira Reiner and Gary R. Netzer, City Attorneys, John T. Neville, Senior Assistant City Attorney, Richard M. Helgeson, Assistant City Attorney, and Katherine J. Hamilton, Deputy City Attorney, for Defendant and Appellant.

Joseph Daniel Davis and Charlotte E. Costan for Plaintiff and Respondent.

Opinion

**THOMPSON, J.**—The City of Los Angeles (City) appeals from the judgment upon a jury verdict in favor of plaintiff Cassie Stark. Plaintiff was severely injured when a police pursuit of a traffic violator culminated in the latter's vehicle broadsiding her vehicle. The main issue on appeal involves the liability of the City for negligence of its officers during the pursuit. The City contends that it was immune from liability under Government Code section 845.8 and was not negligent as a matter of law under Vehicle Code

section 17001. The City also claims error in admission of expert testimony for impeachment on rebuttal and juror misconduct. We disagree and will affirm the judgment.

## Factual and Procedural Background

The evidence in the light most favorable to the judgment showed the following: On Saturday morning, February 18, 1978, at around 9:50 a.m., Los Angeles Police Department officers in a marked vehicle equipped with standard lights and siren were stopped at the intersection of Main and Colden when they saw a Torino on Colden following another vehicle at a distance they considered too close. The officers turned and followed behind the Torino which circled the block, obeying all traffic regulations, and then turned right back on Colden. The police also turned right onto Colden, behind a Cadillac which had made a left turn in front of them. The Torino accelerated down Colden to about 40 miles per hour in a 25-mile-per-hour zone and made a squealing left turn northbound onto Wall Street, a very narrow street in that residential area. Meanwhile, midway on Colden Officer Brown had determined that the Torino was running from the police. The police had accelerated to 40 miles per hour on Colden and followed behind the fleeing Torino, also making a left turn onto Wall. As they turned they saw the Torino go through the stop sign at 95th Street at about 55 miles per hour. The police who were chasing did not activate their siren. The Torino went through the "yield" sign at 94th Street, another stop sign at 93d Street, and broadsided plaintiff's vehicle in the intersection of 92d Street and Wall. At that point of impact, the police vehicle was about 500-600 feet away.

Plaintiff had been driving along through the street of 92d Street. Her car had no radio. The windows were down. Her normal procedure upon hearing a siren was to slow down, determine where it was coming from and if it was coming towards her to pull to the side of the street and stop.

Plaintiff, who was severely injured, sued the City for negligence of its officers in the conduct of the pursuit by failing to activate the siren to warn or failing to discontinue the pursuit. The court denied the City's motion for nonsuit. At trial witnesses testified to the preceding facts and expert witnesses were called by both sides. On rebuttal, over objection, plaintiff was permitted to call an expert witness to impeach defense expert's surprise testimony that a siren could only be heard for 500 feet. The City's motion for a directed verdict was denied. The jury returned a unanimous verdict in favor of the plaintiff awarding her $413,000. The City's motion for judgment notwithstanding the verdict on grounds of immunity from liability was denied. Also denied was its motion for new trial on grounds, inter alia, of

jury misconduct. This appeal followed entry of judgment on the jury verdict.

## DISCUSSION

## I

### *Negligence*

■ "Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].) We, therefore first turn to the negligence issue, including the threshold question of duty.

■ In order for damage to be compensable under a negligence theory there must be (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting injury. (*City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395, 402 [182 Cal.Rptr. 443] (hereafter *Sacramento*).

■ There is no merit to the City's claim that, as a matter of law, it could not be found negligent. A public entity is liable for injuries proximately caused by negligent acts or omissions in the operation of any motor vehicle by an employee of the public entity, acting within the scope of employment. (Veh. Code, § 17001; *Brummett* v. *County of Sacramento* (1978) 21 Cal.3d 880, 884-886 [148 Cal.Rptr. 361, 582 P.2d 952, 4 A.L.R.4th 858]; *City of San Jose* v. *Superior Court (Martinez)* (1985) 166 Cal.App.3d 695, 698 [212 Cal.Rptr. 661] (hereafter *San Jose*). While a public entity may not be held liable due to its police officers' decision to engage in a chase, "[i]t is now settled that police officers pursuing a suspect have no special exemption from the duty to exercise due care for the safety of others. . . ." (*Sacramento, supra,* 131 Cal.App.3d at p. 405.)

In *Brummett,· supra,* the Supreme Court held that the county could be held liable for injuries proximately caused by its officers' failure to exercise due care for the safety of others on the road during a high speed pursuit of a suspected felon. (21 Cal.3d at pp. 886-887.) The court indicated that failure to discontinue a pursuit could be evidence of lack of due care.

In *Brummett,* the officers directly collided with the victim. ■ But the rule that police in pursuit of a suspect have a legal duty to drive in such a manner as to not impose on others unreasonable risk of harm (*id.,* at p. 886)

also applies where, as here, the motorist being pursued by the police collides with the victim. (See, e.g., *Sacramento, supra,* 131 Cal.App.3d 395; *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648 [161 Cal.Rptr. 140] (hereafter *Duarte*); *Gibson* v. *City of Pasadena* (1978) 83 Cal.App.3d 651 [148 Cal.Rptr. 68]; *San Jose, supra,* 166 Cal.App.3d 695; see also Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar Supp. 1984) § 4.67, p. 68.)

■ In driving a police vehicle during a pursuit, police officers must act as reasonably prudent persons under the circumstances. (*Gibson* v. *City of Pasadena, supra,* 83 Cal.App.3d at p. 658; see Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 4.67, p. 425.) The duty to protect third persons from unreasonable risk of injury may include a duty to protect against the misconduct of another individual. (*Duarte, supra,* 100 Cal.App.3d at p. 658.) While, as a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 203), a duty is imposed upon those who create a foreseeable peril, not readily discoverable by endangered persons, to warn them of such potential peril (*id.,* at p. 204; *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 785-786 [73 Cal.Rptr. 240, 447 P.2d 352]). ■ And it has been specifically held that the duty to exercise due care for the safety of others during a vehicle pursuit may include the duty to sound a siren to warn others of the approaching pursuit. (*Sacramento, supra,* 131 Cal.App.3d at p. 405.)

■ As the court in *Sacramento* explained: ". . . . The concept of duty, like that of proximate cause, limits the liability of a defendant where it is considered unjust to hold him liable. [Citation.] In the absence of special factors or some relationship it is normally not the duty of one person to warn another of danger. But where the defendant has created the dangerous situation or stands in relationship to the injured party such that he should warn of danger then the failure to warn may be considered actionable negligence. [Citations.] [¶] The concept of duty is closely related to that of proximate cause. Indeed, Prosser says that every question arising in connection with proximate cause may be phrased as: '. . . was the defendant under a duty to protect the plaintiff against the event which did in fact occur?' [Citation.] In cases such as this, where the immediate cause of the injury is the misconduct of a third person, the answer to this question must depend upon whether the hazard that the third person will cause injury to another is created by the conduct of the defendant. [Citation.] ■ *Where the police officers engage in a vehicle pursuit and their pursuit causes the suspect to engage in a course of conduct creating a danger to other users of the highway, a jury could well conclude that the officers are negligent in failing to flash their red lights or sound their siren in order to alert other*

*innocent parties to the approaching danger created by their pursuit.* This is so because the officers are under a duty to exercise due care during a chase for the safety of innocent persons that may be injured." (131 Cal.App.3d at p. 405.) (Italics added.)

*Sacramento* involved facts similar to the case at bench. There, as here, police officers saw a motorist allegedly commit a traffic violation and pursued the motorist. The motorist sped through traffic signals and struck the vehicle of the plaintiff, injuring the victim. In the instant case, as in *Sacramento,* plaintiff's claim of liability for negligence during the pursuit was, inter alia, based upon the contention that if the officers had sounded their siren she would have heard it and not entered the intersection.

The City criticizes *Sacramento* and urges us instead to follow an earlier line of cases, such as *Draper* v. *City of Los Angeles* (1949) 91 Cal.App.2d 315 [205 P.2d 46], and *Pagels* v. *City & County of S.F.* (1955) 135 Cal.App.2d 152 [286 P.2d 877], which rejected the imposition of a duty to sound a siren to warn other motorists. We, however, agree with *Sacramento* that *Draper* and *Pagels* are inconsistent with current decisional authority. (See *Sacramento, supra,* 131 Cal.App.3d at pp. 405-406.)[1]

The City further claims that even under the rule set forth in *Sacramento,* the evidence was insufficient as a matter of law. We disagree. Whether the officers' conduct was negligent and whether their negligence proximately caused plaintiff's injuries are questions of fact. (*San Jose, supra,* 166 Cal.App.3d at p. 699; *Sacramento, supra,* 131 Cal.App.3d at pp. 405-406.) ▮ When a jury's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of the appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support that determination. Where, as here, two or more inferences arise from the facts, a reviewing court is without power to substitute its inferences for those of the trier of fact. It is of no consequence that the trier of fact

---

[1]*Reenders* v. *City of Ontario* (1977) 68 Cal.App.3d 1045 [137 Cal.Rptr. 736], also relied upon by City, not only involved the initial immune decision to pursue but is also distinguishable from our case and *Sacramento,* since it involved the pursuit of a suspected felon, not just a traffic violator. Moreover, insofar as *Sacramento* may conflict with *Reenders,* we find *Sacramento* more persuasive.

The City also attacks the continuing viability of *Sacramento* in light of the language in the Supreme Court decision in *Kisbey* v. *State of California* (1984) 36 Cal.3d 415 [204 Cal.Rptr. 428, 682 P.2d 1093], regarding immunity under Government Code section 845.8. As will be discussed, *infra,* in the section on immunity, we agree with the recent appellate decision in *San Jose, supra,* 166 Cal.App.3d 695, that *Kisbey* does not conflict with *Sacramento.*

believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion. (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925].)

■ Here, the testimony of Officer Brown and plaintiff's expert provided credible evidence from which the jury could reasonably infer that the pursuit started on Colden Street before the turn north onto Wall Street and that the officers created the danger, the driver fleeing at high speed because he was being pursued. Moreover, the testimony of plaintiff as to her driving habits (no radio, windows down, slowing and stopping when she heard a siren) and her expert's testimony as to the audibility range of a siren, constituted solid evidence from which the jury could reasonably conclude that even if the officers delayed only 15 seconds, they were negligent for failing to activate the siren, and this negligent failure to warn proximately caused plaintiff's injuries.

The City argues that allowing governmental liability in a situation such as this will have dire public policy effects. But, as our Supreme Court has often noted, "the policy of compensating injured parties is an important one. 'Unless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by wilful or negligent acts must prevail.'" (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 814 [205 Cal.Rptr. 842, 685 P.2d 1193].)

## II

### *Immunity*

■ We, therefore, next turn to the issue of immunity. The City claims the trial court erred in denying its motion for judgment notwithstanding the verdict because it is immune from liability pursuant to Government Code section 845.8.[2] The City argues that the immunity of section 845.8 bars liability under Vehicle Code section 17001 in police pursuit cases where, as here, the fleeing suspect, not the officers, collide with the victim. The case law, however, is to the contrary.

In *Duarte, supra,* 100 Cal.App.3d 648, where the victim was struck by a drunk driver fleeing in a police car, the appellate court analyzed the in-

---

[2]Section 845.8 is part of the California Tort Claims Act (Gov. Code, § 810 et seq.) and provides in relevant part: "Neither a public entity nor a public employee is liable for: . . . (b) Any injury caused by: (1) An escaping or escaped prisoner; (2) An escaping or escaped arrested person; or (3) A person resisting arrest."

Although the City did not claim immunity under this particular section in its motion for a directed verdict, such an immunity is jurisdictional and therefore can be raised for the first time on appeal. (See *Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 826 [164 Cal.Rptr. 264].)

terrelationship between Government Code section 845.8 and Vehicle Code section 17001. While agreeing that individual officers were immune from liability (*id.*, at pp. 653-654), the court held that section 845.8 did not shield the City from liability (*id.*, at pp. 656-657). The court pointed out that application of the Tort Claims Act immunity would thwart the purpose of Vehicle Code section 17001 of holding a public entity financially account-able for its employees' torts committed with a motor vehicle during the scope of their employment. (*Id.*, at p. 656.) It also concluded that holding the City responsible for injuries caused by the negligent operation of its police vehicles would not offend any public policy underlying the immunity provided by Government Code section 845.8. (*Id.*, at pp. 655-657; see also *San Jose, supra,* 166 Cal.App.3d at p. 699.)

Although *Sacramento, supra,* 131 Cal.App.3d 395, did not discuss the applicability of Government Code section 845.8, the court did hold that the specific provision for public entity liability in Vehicle Code section 17001 overrode the general derivative immunity provided by Government Code section 815.2. (*Id.*, at p. 400.)

The City, however, claims that both *Duarte* and *Sacramento* have been impliedly overruled, or at least undermined, by the Supreme Court's recent decision in *Kisbey v. State of California, supra,* 36 Cal.3d at p. 415.) In *Kisbey,* police officers responding to a radio call indicating that a serious disturbance had occurred, followed a Ford pointed out to them by a witness, which was weaving through traffic without lights, and stopped it. They parked behind the Ford and got out of their car to investigate. As they walked toward the Ford, intending to question the occupants about the dis-turbance and to cite the driver for traffic violations, the Ford sped away and collided with the plaintiff's car. The *Kisbey* court affirmed a nonsuit for the City on the ground of immunity under Government Code section 845.8. Vehicle Code section 17001, *Duarte,* and *Sacramento,* though discussed in the briefs to the Supreme Court, were not mentioned in the *Kisbey* opinion. (See *San Jose, supra,* 166 Cal.App.3d at p. 701, fn. 3.)

In support of its proposition that Government Code section 845.8 immu-nizes the City in the instant case, the City relies on the following broad language in *Kisbey*: "It seems clear that the purpose of the broadening amendment to [section 845.8], subdivision (b) [which extended the original immunity for escaping or escaped prisoners to include persons resisting or escaping arrest], was to immunize public entities and employees from the entire spectrum of potential injuries caused by persons actually or about to be deprived of their freedom who take physical measures of one kind or another to avoid the constraint or to escape from it. It would plainly violate the legislative intent if particular words of the statute—such as 'arrest' or

'resisting'—were given such technical meanings that a case fell between the cracks of the immunity because, for example, the police had not intended a full arrest—as distinguished from a temporary detention—when the subject fled, or because at the time of the escape the process had not reached the point of physical control over the suspect." (*Id.*, at p. 419.)

The City's reliance on *Kisbey* is misplaced. In *San Jose, supra,* 166 Cal.App.3d 695, the appellate court recently addressed the issue of the interplay of Vehicle Code section 17001 and Government Code section 845.8 in a vehicular pursuit situation in light of the *Kisbey* decision. In *San Jose,* as here, a vehicle being chased by police collided with plaintiff's vehicle. The *San Jose* court concluded that notwithstanding the sweep of the above language in *Kisbey,* the *Kisbey* holding was narrow and does not conflict with either *Duarte* or *Sacramento.* We agree with *San Jose's* construction of *Kisbey* as only holding that the immunity of section 845.8 was applicable whether the officers intended an arrest or merely a temporary detention of the driver and even if the process had not reached the point of physical control over the suspect. The facts of the case, as well as the discussion in the majority opinion and dissent, involved the escape from detention of a suspect who was already stopped though not yet under physical control. The case, unlike here, did not involve an ongoing vehicular pursuit. Accordingly, the City was not immune from liability for the conduct of its officers and the trial court correctly denied its motion for judgment notwithstanding the verdict.

### III

### *Impeachment*

The City further contends that the trial court erred by permitting plaintiff to call a previously undisclosed expert witness on rebuttal. We do not agree. The trial court properly limited plaintiff's expert witness (Gullion) to impeachment of the foundational fact of the siren's audibility range upon which the defense expert, in surprise testimony, had based his opinion that plaintiff would probably not have heard the siren had it been activated.

Code of Civil Procedure section 2037.5 applies to a situation such as this where a party calls an expert witness on rebuttal. (*Kennemur* v. *State of California* (1982) 133 Cal.App.3d 907, 918 [184 Cal.Rptr. 393].) That section imposes the sanction of limiting the expert's testimony to impeachment to be imposed when either an expert witness who is called to testify was not included in the party's list of designated experts or the designation did not, for example, disclose the substance of the facts and opinions to be

testified to at trial. (*Id.*, at pp. 917, 919; Code Civ. Proc., §§ 2037.3, 2037.5.)

In *Kennemur*, relied upon by City, the court defined the term impeachment in this statute as having the meaning provided in Evidence Code section 780, i.e. any matter going to the truthfulness of the witness to be impeached. (133 Cal.App.3d at p. 922.) ▮▮▮ Although a party may not call an expert witness merely to express an opinion contrary to that expressed by another expert, a party may impeach by showing the falseness of any matter upon which the expert based his opinion. (*Id.*, at pp. 922-923; 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 28.7, p. 913.) "A trial court should permit a party to call an unlisted expert to testify that a fact relied on by the opponent's expert was incorrect or nonexistent." (*Kennemur, supra,* 133 Cal.App.3d at p. 925.)

▮▮▮ Here, the defense expert's surprise testimony, that the siren could be heard only by a motorist traveling at right angles to the siren vehicle within a maximum of 500 feet in an open area and within an even lesser range where there were buildings and shrubbery, was a foundational fact upon which the expert based his opinion that there was no negligence. Thus, it was proper to allow plaintiff's expert to contradict that fact by testifying to tests of that siren showing a much greater range of audibility. Moreover, the trial court could also consider that this testimony was a surprise since there had been no prior disclosure that the defense expert would testify on the audibility range. (See *Kennemur, supra,* 133 Cal.App.3d at p. 925; Code Civ. Proc., §§ 2037.3, 2037.5.) Accordingly, there was no abuse of discretion.

IV

*Juror Misconduct*

▮▮▮ Also without merit is the City's claim that its motion for new trial should have been granted because of juror misconduct. ▮▮▮ The trial court's denial of a motion for new trial will not be disturbed on appeal unless an unmistakable abuse of discretion clearly appears. (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].) No such abuse has been shown here.

▮▮▮ The affidavit of juror Smith submitted by the City showed, at most, that juror Allen made a passing reference to her knowledge of the existence of other police codes without communicating their content; and that Smith, in turn, properly stated that "we could not discuss other police codes since that was not in evidence." Moreover, in opposition to the new

trial motion, the plaintiff submitted another juror's counteraffidavit, which was admissible (see *People* v. *Lessard* (1962) 58 Cal.2d 447, 454 [25 Cal.Rptr. 78, 375 P.2d 46]) and which stated that the jury did not consider any other evidence. Accordingly, the court could properly find that the City's affidavit did not establish misconduct of such a character as to have improperly influenced the jury (see Evid. Code, § 1150) and any possible presumption of prejudice had been rebutted.

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied June 5, 1985, and appellant's petition for review by the Supreme Court was denied August 29, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.