21 F.3d 1116
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leroy A. STOTTS, Petitioner-Appellant,
v.
Peggy L. KERNAN, Respondent-Appellee.
 No. 93-16070.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1994.*
Decided April 19, 1994.
 
 Before: SCHROEDER, D.W. NELSON, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Leroy A. Stotts ("Stotts"), a California state prisoner proceeding pro se, appeals the district court's denial of his petition for a writ of habeas corpus. Stotts was convicted of first degree murder, in violation of California Penal Code Sec. 187, and of use of a firearm, in violation of California Penal Code Sec. 12022.5, and was sentenced to 27 years to life in prison. Stotts challenges his conviction on the following grounds: prosecutorial misconduct in closing argument; improper admission of evidence of prior acts and statements by Stotts; improper admission of rebuttal evidence; insufficiency of the evidence; and failure of the trial court to instruct sua sponte on manslaughter. We have jurisdiction pursuant to 28 U.S.C. Sec. 2253. We affirm the denial of the writ.
 
 DISCUSSION
 
 3
 "We may not affirm a district court's denial of a writ of habeas corpus unless the court either held a hearing or the record shows that the district court independently reviewed the relevant portion of the state court record." Lincoln v. Sunn, 807 F.2d 805, 808 (9th Cir.1987). Here, after reviewing the entire record, the district court adopted the findings of a magistrate, and denied the writ. We review the district court's denial of the writ de novo. Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989).
 
 
 4
 A writ of habeas corpus is available in federal court only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1986). A violation of state law is not cognizable under habeas corpus unless it rises to the level of a constitutional violation. Estelle v. McGuire, 112 S.Ct. 475, 481 (1991).
 
 I. Prosecutorial Misconduct
 
 5
 Prosecutorial misconduct constitutes a due process violation only if it is "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (citations omitted). The alleged misconduct is reviewed in light of the entire trial, with relief granted only if the conduct "infected the trial with unfairness." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Stotts claims that the prosecutor engaged in reversible misconduct in closing argument by referring to the fact that Stotts' mother did not testify, by making allegedly inflammatory statements suggesting that Stotts had killed the victim because he thought she was pregnant, and by implying that the gunshot wounds were "sexual in nature." None of these claims has merit.
 
 
 6
 Although it is true that the prosecutor pointed out that the defense had failed to explain why Stotts' mother did not testify, the defense earlier had raised an inference, through the testimony of Oscar Stotts (Stotts' father), that Stotts could not have had access to the alleged murder weapon. As the State suggests, the inference raised by the defense made it legitimate for the prosecution to point out that the defense had not called to the stand the witness best able to prove the point. Cf. People v. Hughey, 194 Cal.App.3d 1383, 1395, 240 Cal.Rptr. 269, --- (1987) (holding that the prosecution may comment on the failure of the defense to call logical witnesses even where the witness is the defendant's wife).
 
 
 7
 The relevant portion of the closing argument reads in full as follows:
 
 
 8
 Prosecutor: ... Did Stotts have the means to commit this murder? His father owned the shotgun that killed Ms. Pauletich [the victim]. The defense wanted you to believe that there was no way Mr. Stotts could have gotten that shotgun, although it was not addressed in [the defense's] closing argument.
 
 
 9
 The statements were, from the witness, Mr. Stotts, Oscar Stotts, in particular, that his wife was sick at that time and, therefore, never got out of bed. The gun cabinet was only feet away from where she was lying. Why didn't Mrs. Stotts come in and tell us that?
 
 
 10
 Defense: I object. I didn't call all witnesses.
 
 
 11
 The Court: That doesn't mean there can't be comments made on it.
 
 
 12
 Prosecutor: Mrs. Stotts did not testify on that point. Wouldn't she be the best one? If you wanted to believe that Mrs. Stotts never left that bed, you'd want to hear it from Mrs. Stotts' mouth, not from Mr. Stotts. I can't cross-examine Mrs. Stotts through Mr. Stotts as to where she was during that period of time, that crucial period of time.
 
 
 13
 (RT 623-24).
 
 
 14
 These comments do not warrant reversal. We emphasize that the prosecutor did not suggest what Mrs. Stotts' testimony would have been, but rather merely sought to cast doubt on the merits of the defense's argument by noting their failure to call a logical witness. Moreover, even if one assumes that the remarks were inappropriate, they did not render the trial as a whole fundamentally unfair. See United States v. Pruitt, 719 F.2d 975, 978 (9th Cir.) (per curiam), cert. denied, 464 U.S. 1012 (1983) (improper comment warrants reversal only if it appears that the comment may have affected the verdict).
 
 
 15
 Stotts' next claim is that the prosecutor made allegedly inflammatory statements suggesting that Stotts had killed the victim because he thought she was pregnant. Once again, a review of the trial transcript does not reveal reversible prosecutorial wrongdoing. Testimony presented earlier during the trial had established that the victim had told Stotts and others that she was pregnant by Stotts, and Stotts conceded that he had quarrelled with his mother about the victim's pregnancy claim, a quarrel that had disturbed him a great deal. (RT 554). The relevant passage from the prosecutor's closing argument reads as follows:
 
 
 16
 Prosecutor: ... As[k] yourselves, did the defendant have a motive to kill Denise Pauletich? The answer is that he did. Denise P. and the Defendant were arguing during this period of time....
 
 
 17
 What were they arguing about? The one thing we know they were arguing about was the victim's claim that she was pregnant by the Defendant. The Defendant admitted that he had had sexual relations with Ms. Pauletich. She told him that she was pregnant.
 
 
 18
 Now, the defense says this is of no importance, insignificant. Why didn't they bring that out in their case? ... It wasn't until cross-examination [of Stotts] that this came out.... He says, "Well, okay, that's true. She did tell me that she was pregnant. Yes, it did upset me. I had an argument with my mother over this fact. It was causing distress in my life. My life was in upheaval over this. Ms. Pauletich told me--I was told that Ms. Pauletich would go to the District Attorney's Office if Mr. Stotts didn't do something about the fact that she was carrying his child.
 
 
 19
 Now, do you think the average man would become upset over that fact? I suggest to you, any male accused of having fathered someone's child would be concerned about that.
 
 
 20
 Defense: Your Honor, may we approach the bench? [A sidebar followed.]
 
 
 21
 Prosecutor: Let me clarify something. We don't have any evidence that Ms. Pauletich was pregnant, but that's not an issue. The issue is whether or not the Defendant believed she was pregnant. That is the motive that would cause the Defendant to want to get Ms. Pauletich out of the way.
 
 
 22
 (RT 618-19). Again, these comments do not amount to a denial of due process. Although Stotts testified that he did not believe the victim when she said she was pregnant, the jury could have disbelieved him, and the prosecutor was within his rights to speculate that the victim's claim that she was pregnant was one of the factors that led Stotts to commit the murder. The jury repeatedly was told, moreover, that the opening and closing arguments of counsel were not evidence. Accordingly, we conclude that the prosecutor's comments on the pregnancy did not violate Stotts' due process rights.
 
 
 23
 Stotts final claim of prosecutorial misconduct is that the prosecutor wrongfully speculated as to the reasons for the number and position of the gunshot wounds, and indicated that one of the wounds was sexual in nature. This challenge also must fail. The trial testimony established that the victim was killed with a shotgun that had to be reloaded after each shot. The medical evidence showed that the victim had received two gunshot wounds to her head, either of which would have killed her, a third shot to her face, a fourth to her abdomen, and a fifth on her upper thigh. The prosecutor suggested that the shot to the face evidenced passionate hatred of the sort that results from an intimate relationship gone sour. He further suggested that the shots to the abdomen and groin indicated that the killer thought his victim may have been pregnant, or was motivated by sexual animosity, further implicating Stotts. (RT 630)
 
 
 24
 Although the evidence was by its nature disturbing, and the prosecutor's interpretation of that evidence was contested, the evidence provided a factual basis for his interpretation, and it was up to the jury to determine which interpretation to believe.
 
 
 25
 In sum, we cannot say that the prosecutor's comments challenged by Stotts so infected the proceedings with unfairness as to constitute a violation of due process.
 
 
 26
 II. Admission of evidence of prior acts and statements by Stotts
 
 
 27
 A state court's evidentiary rulings do not warrant a writ of habeas corpus unless the rulings deprived the petitioner of the fundamental elements of a fair trial. Estelle v. McGuire, 112 S.Ct. 475, 481 (1991). Stotts claims that the trial court committed reversible error when it allowed the prosecution to introduce evidence that, prior to the murder, Stotts once had gone after the victim with a baseball bat, and once had said to his roommate regarding the victim that he would "like to beat her up and leave her in a field somewhere." The introduction of this evidence did not violate Stotts' due process rights. Although prejudicial, both pieces of evidence were relevant and probative on the issue of motive.
 
 
 28
 In his testimony, Gary Bacome, Stotts' roommate at the time, testified that he had seen Stotts and the victim argue five or six times in February 1986, the month of the murder. He testified that on one occasion the victim drove a car into their driveway, hitting the back of Stotts' pickup truck, and proceeded to honk her horn continuously for several minutes. Bacome testified that although Stotts approached the car a few times in an attempt to get her to stop, the honking continued. He further testified that Stotts finally went into their home, picked up a baseball bat, and headed back outside. Bacome claimed that it was only after he told Stotts that the better way to handle the situation would be to have the police come that Stotts returned inside. (RT 183)
 
 
 29
 Bacome also testified that, in January 1986, he had heard Stotts make a threat regarding the victim. As Bacome phrased it, "[Stotts] said that if she didn't leave him alone, that he'd like to beat her up and leave her in a field somewhere." (RT 194)
 
 
 30
 Although the testimony concerning the physical and verbal threats clearly was prejudicial to Stotts, its admission did not violate his due process rights. One of the prosecution's theories was that Stotts' increasing irritation with the victim culminated in the murder. The testimony of Bacome was thus relevant and sufficiently probative of motive that, whether or not we would strike a different balance, its admission did not deprive Stotts of a fair trial. See Bashor v. Risley, 730 F.2d 1228, 1238 (9th Cir.), cert. denied, 469 U.S. 838 (1984) (holding that evidence of prior threats introduced to prove defendant's state of mind, although prejudicial, does not violate due process).
 
 III. Improper admission of rebuttal evidence
 
 31
 Stotts also claims that the court erred when it permitted the prosecution to introduce new evidence on rebuttal. In general, decisions on the order of proof are committed to the sound discretion of the trial court, and California law establishes that rebuttal is appropriate to contradict exculpatory testimony offered by the defense, Stark v. City of Los Angeles, 168 Cal.App.3d 276, 288, 214 Cal.Rptr. 216, --- (1985).
 
 
 32
 After the defense had rested its case, the court allowed the prosecution to put on the stand a neighbor of Stotts' father named Ingalls. The defendant had testified that he drove straight to work after leaving home on the morning of February 26. Ingalls testified that he was awakened at 3 a.m., either on the night of the crime or the next night, by the sounds of the defendant hosing down his pickup truck in his father's driveway. (RT 565) Ingalls' testimony thus undermined the credibility of Stotts' claim, and could have led the jury to conclude that Stotts had not been fully truthful in his account of the events of February 26. The testimony of Ingalls thus raised an inference of consciousness of guilt on the part of the defendant. This inference was not possible prior to Stotts' testimony for the defense, and the district court was within its discretion in admitting the evidence on rebuttal. The defense, moreover, was allowed a full opportunity to cross-examine the new witness and was allowed to put Stotts' father back on the stand as a surrebuttal witness.
 
 
 33
 Accordingly, we agree with the district court that Stotts' due process rights were not violated by the admission of the rebuttal evidence.
 
 
 34
 IV. Instruction on manslaughter.
 
 
 35
 Stotts' claims that the district court should have instructed the jury sua sponte on voluntary manslaughter. In non-capital cases, however, we have stated that the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." James v. Reese, 546 F.2d 325, 327 (9th Cir.1976) (per curiam). Although the jury convicted Stotts of first degree murder, the State did not request the death penalty. Thus, under James, Stotts is not entitled to federal habeas corpus relief on the basis of the trial court's failure to instruct on voluntary manslaughter.[1]
 
 V. Sufficiency of the evidence
 
 36
 Stotts final claim is that the evidence presented against him was insufficient to support a conviction for first degree murder. Asserting that the evidence does not establish that he acted with premeditation and deliberation, he seeks to have his conviction reduced to one for second degree murder. The evidence presented at trial is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Ocampo, 937 F.2d 485, 488 (9th Cir.1991).
 
 
 37
 Although Stotts claims that the evidence does not show planning or premeditation, a rational jury could have found these elements beyond a reasonable doubt. As Stotts concedes, credible evidence established that Stotts frequently argued with the victim, and was annoyed and embarrassed by her. Credible evidence also showed that the victim's claim that she was pregnant had led to a quarrel between Stotts and his mother, and this quarrel had disturbed Stotts considerably. Expert testimony identified the murder weapon as Stott's father's shotgun, and several witnesses put Stotts near the scene of the crime at the time of the murder.
 
 
 38
 If the jury believed, as substantial evidence suggested, that it was Stotts who had murdered the victim, there was more than sufficient evidence of premeditation to support a first degree murder conviction. In order to commit the crime, Stotts had to induce the victim to the partially secluded hillside, carrying with him the shotgun that he surreptitiously had removed from his father's gun case. The secluded location itself is indicative of planning in this context. The jury also could have concluded from the empty beer bottles at the scene, two of which had their caps screwed back on in Stotts' characteristic fashion, that Stotts intended to get the victim intoxicated in order to more easily carry out the murder. Finally, the number and location of the bullet wounds, as described above, further evidenced deliberation.
 
 
 39
 Accordingly, we conclude that the evidence supports the jury's verdict.
 
 CONCLUSION
 
 40
 For the above reasons, we affirm the district court's denial of Stotts' petition for a writ of habeas corpus.
 
 
 41
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note that, in any event, the district court's failure to give the instruction does not warrant granting the writ. First, Stotts' sole defense at trial was complete noninvolvement in the murder, and a sua sponte instruction on voluntary manslaughter would have conflicted with the defense's theory of the case. In such circumstances, California courts have held that the instruction is not required. See People v. Groce, 18 Cal.App.3d 292, 295 (1971). Second, the trial court instructed the jury on second degree murder, which, like voluntary manslaughter, does not require deliberation and premeditation. The jury, however, found these elements present and convicted Stotts of first degree murder. In light of our conclusion, infra, that there was sufficient evidence to support the first degree murder conviction, the failure to give the voluntary manslaughter instruction was not prejudicial to Stotts. See Hopper v. Evans, 456 U.S. 605, 613-14 (1982)