[S.F. No. 23738. Aug. 24, 1978.]

KENNETH L. BRUMMETT et al., Plaintiffs and Appellants, v.
COUNTY OF SACRAMENTO et al., Defendants and Respondents.

COUNSEL

Gordon, Holstein & Ropers, Gordon, Weltin, Holstein & Ropers, William C. Gordon, Allan I. Shatkin, Mark Ropers, Rita S. Grobman and Mary Bolint for Plaintiffs and Appellants.

Memering, Stumbos, DeMers & Ford, Memering, Stumbos DeMers, Ford & Norris, John J. Roman, Roberta Lee Franklin and Suzanne M. Trimble for Defendants and Respondents.

OPINION

MANUEL, J.—Plaintiffs appeal the decision of the trial court granting summary judgments in favor of defendants in consolidated personal injury actions. We affirm dismissal of the complaint against the individual defendants, but reverse the summary judgment granted to defendant County of Sacramento (County).

The individual defendants are two police officers who, while acting within the scope of their employment, were driving separate police vehicles in high speed pursuit of a suspected felon. Deputy Boyd had been alerted by radio that a bank robbery had occurred and that the armed suspect was believed to be driving in his vicinity. Deputy Erwin joined the pursuit in response to an assistance request.

Both patrol cars hit a vehicle in the intersection of the Power Inn and Elder Creek Roads, and Deputy Boyd's car careened into plaintiffs' pickup truck which was in the left turn lane adjacent to the northbound lanes of Power Inn Road. Estimates of the speeds of the cars involved in the chase indicated the suspect's automobile was traveling at 80-90 miles per hour when it approached the intersection. Deputy Erwin later stated that he was uncertain of the speed of his own patrol car, but doubted that it exceeded 80 miles per hour. Deputy Boyd thought he was going 90 miles per hour at his highest rate of speed during the pursuit. Both

officers had previously been involved in high-speed vehicle chases without incident and both had received formal training in emergency driving techniques.

Before discovery was completed, defendants' motions for summary judgment were granted on the grounds that the officers were immunized from liability as public employees acting in the line of duty, and that the County was therefore derivatively immune.

■ Section 17004 of the Vehicle Code provides: "A public employee is not liable for civil damages on account of personal injury to . . . any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call *or when in the immediate pursuit of an actual or suspected violator of the law, . . .*" (Italics added.) Since at the time of the accident, Deputies Boyd and Erwin were in their patrol cars[1] in active pursuit of a suspected bank robber, under this section of the Vehicle Code they were immunized from liability, and the complaint was properly dismissed against them.

■ Defendant County argues that since the individual defendants were immune, being peace officers lawfully pursuing a suspect, it cannot be liable because Government Code section 815.2, subdivision (b), provides derivative immunity for the public entity employer of an immune employee. Defendant County's assertion of nonliability is in error. Government Code section 815.2, subdivision (b), states: "*Except as otherwise provided by statute,* a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (Italics added.) The question, therefore, is whether liability is "otherwise provided by statute." It must be answered in the affirmative. Vehicle Code section 17001 makes a public entity liable for its employee's negligence in the operation of a motor vehicle. That section provides: "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an

---

[1]Section 165 of the Vehicle Code provides:
"An authorized emergency vehicle is:

" . . . . . . . . . . . . . . . .

"(b) Any publicly owned vehicle operated by the following persons, agencies or organizations:

" . . . . . . . . . . . . . . .

"(2) Any police department . . . ."

employee of the public entity acting within the scope of his employment."

The Law Revision Commission comments to sections 17001 and 17004 indicate that these sections in article 1 of chapter 1 of the Civil Liability Division of the Vehicle Code, are in their present alignment as a result of the commission's recommendations made while that body was studying government tort liability. (See Cal. Law Revision Com. coms. to Veh. Code, §§ 17001 to 17004, 66A West's Ann. Veh. Code (1971 ed.) pp. 91, 101, 103; Deering's Ann. Veh. Code (1972 ed.) pp. 137, 147, 148.) Unquestionably, the Legislature understood the interrelationship between the liability of the public entity contained in section 17001, and the exemption of the employee from liability contained in section 17004, when it drafted Government Code section 815.2. (Cf. *Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 397 [184 P.2d 323].)[2]

Indeed, 20 years prior to the enactment of section 815.2 in the Tort Claims Act, this court noted in *Raynor* v. *City of Arcata* (1938) 11 Cal.2d 113, 118-120 [77 P.2d 1054], that the predecessors to sections 17001 and 17004 were signed into law on the same day, and were to be read together with each provision to be given full effect. We held therein that Vehicle Code section 400 (later § 17001) imposed liability upon a public employer even though under Vehicle Code section 401 (later § 17004) the public employee might be immune. (*Id.,* p. 118-119.) It was further observed that ". . . in the situation before us the exemption of the employee does not rest on an adjudication of his [the employee's] freedom from negligence, but on the statutory declaration that he should be free from personal liability for his negligent acts." (*Id.,* p. 121.) These precursor statutes also have been treated as consents to sue as well as the basis for the establishment of liability. (*Brindamour* v. *Murray* (1936) 7 Cal.2d 73, 78 [59 P.2d 1009].)

Government Code section 815.2 was adopted in this statutory and decision context and was enacted at the same time as Government Code section 815. (Stats. 1963, ch. 1681, § 1, p. 3268.) The Senate Judiciary

---

[2]The commission comment to Vehicle Code section 17001 states in relevant part: "The Governmental Liability Act specifically imposes liability on public entities for the intentional as well as the negligent torts committed by public employees in the scope of their employment. This amendment removes any doubt which may exist concerning the applicability of this principle to torts involving the operation of motor vehicles. See Van Alstyne, California Government Tort Liability, § 7.67 (Cal.Cont.Ed.Bar 1964)." (See Cal.Law Revision Com. coms. to Veh. Code, § 17001, 66A West's Ann. Veh. Code (1971 ed.) p. 91; Deering's Ann. Veh. Code (1972 ed.) p. 137.)

Committee in the note to section 815 commented: ". . . In the following [portion] of this division there are many sections [e.g., §§ 815.5-815.6.] providing for the liability of governmental entities under specified conditions. In other codes there are a few provisions providing for the liability of governmental entities, e.g., Vehicle Code section 17001, et seq. . . ." (2 Sen. J. (1963 Reg. Sess.) pp. 1886-1887.) Although section 815.2 is generally an exemption provision, the same committee did state, in its comment to the section, that: "The exception appears in subdivision (b) because under certain circumstances it appears to be desirable to provide by statute that a public entity is liable even when the employee is immune. . . ." (2 Sen. J. (1963 Reg. Sess.) pp. 1887-1888.)[3] Thus, the Legislature extended governmental liability while it sustained employee immunity.[4]

We conclude, therefore, that section 17004 defined only a limited immunity, i.e., an employee immunity, and that section 17001 "otherwise" provides for public entity liability. Vehicle Code section 17001, therefore, is cognizable under the exception of section 815.2, subdivision (b).

On this showing, the County is not immunized simply because Deputies Erwin and Boyd were immune. Vehicle Code section 17001 provided for entity liability and the trial court erred in granting the County summary judgment on the grounds of statutory immunity. In so ruling, it failed to consider whether Deputies Boyd and Erwin were negligent so as to create liability on the part of the county. Had the court properly applied the law, it would have assessed whether there were triable issues of fact and may have ultimately denied the County summary judgment.

Although it is clear on the record before us that the deputies were lawfully engaged in ". . . the immediate pursuit of a suspected [law] violator, . . ." plaintiffs claim correctly that the law does not permit the

---

[3]This comment further provides: "For example, Chapter 2 (commencing with Section 830) provides that *a public entity may be liable for a dangerous condition of public property even though no employee is personally liable.*" (Italics added.) The cited chapter contains no such express provision as those italicized. Like the pertinent provisions of the Vehicle Code here involved, the provisions of that chapter infer the proposition. Thus it could not have been intended that any special language was needed to satisfy the section 815.2, subdivision (b) exception.

[4]See Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964) section 7.58-7.72, pages 341-352, generally; see also Van Alstyne, California Government Tort Liability (Supp.) (Cont.Ed.Bar 1969) sections 7.58-7.71.

police to drive with impunity from the moment they activate their sirens and flashing lights. (*Peerless Laundry Serv.* v. *City of Los Angeles* (1952) 109 Cal.App.2d 703, 707 [241 P.2d 269].) Section 21055 of the Vehicle Code sets out a minimum standard of due care when it states that the drivers of authorized emergency vehicles are exempt if ". . . the vehicle sounds a siren . . . and . . . displays a lighted red lamp . . . as a warning to other drivers. . . ."[5] Vehicle Code section 21056, however, provides that "Section 21055 does not relieve the driver of a vehicle from the duty to drive with due regard for the safety of all persons using the highway . . . ." Accordingly, section 17004 relieves Deputies Boyd and Erwin of liability since they were in immediate pursuit with the sirens and flashers on so as to satisfy section 21055. Yet for the County to avoid liability, Boyd and Erwin must have acted with due care as required by section 21056. ■ The cases defining this standard state that an exempt driver must observe that degree of care imposed by common law to immunize his public entity employer from liability under Vehicle Code section 17001. In *Torres* v. *City of Los Angeles* (1962) 58 Cal.2d 35, 47 [22 Cal.Rptr. 866, 372 P.2d 906], it was held that such driver, operating his vehicle in the line of duty, must nonetheless drive in such a manner as would not impose upon others an unreasonable risk of harm. The court said "The question to be asked is what would a reasonable, prudent emergency driver do under all of the circumstances, including that of emergency." (*Id.*, at p. 51.)

There is uncontradicted evidence in the record indicating that Deputies Boyd and Erwin were traveling between 80 and 100 miles per hour as

[5]Section 21055 of the Vehicle Code provides: "The driver of an authorized emergency vehicle is exempt from Chapter 2 (commencing with Section 21350), Chapter 3 (commencing with Section 21650), Chapter 4 (commencing with Section 21800), Chapter 5 (commencing with Section 21950) Chapter 6 (commencing with Section 22100), Chapter 7 (commencing with Section 22348), Chapter 8 (commencing with Section 22450), Chapter 9 (commencing with Section 22500), and Chapter 10 (commencing with Section 22650) of this division, and Article 3 (commencing with Section 38305) and Article 4 (commencing with Section 38312) of Chapter 5 of Division 16.5, under all of the following conditions:

"(a) If the vehicle is being driven in response to an emergency call or while engaged in rescue operations or is being used in the immediate pursuit of an actual or suspected violator of the law or is responding to, but not returning from, a fire alarm, except that fire department vehicles are exempt whether directly responding to an emergency call or operated from one place to another as rendered desirable or necessary by reason of an emergency call and operated to the scene of the emergency or operated from one fire station to another or to some other location by reason of the emergency call.

"(b) If the driver of the vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians.

"A siren shall not be sounded by an authorized emergency vehicle except when required under this section."

they approached the intersection. Deputy Erwin acknowledged in his deposition that this rate of speed was so excessive that effective evasive maneuvers were not possible. Deputy Boyd stated that he did not step on his brakes at all, even though other vehicles were in the intersection, and Deputy Erwin conceded he was unaware of the color of the traffic signal when he entered the intersection. Deputy Boyd stated, furthermore, that police practices advised "if there was a problem" with chasing a suspected felon, the officers were to cease pursuit, and that he understood this to refer to traffic conditions.

■ Due care as an element of negligence presents a question of fact for the jury. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 492, p. 2755.) If the circumstances permit a reasonable doubt whether defendants' conduct violated the boundaries of due care, the doubt must be resolved as an issue of fact by the jury rather than of law by the court.

Based upon the evidence in the record concerning the speed of the officers' cars, the vehicular traffic at the time of the accident, one officer's lack of awareness of the color of the light at the intersection, and their instructions on when to discontinue pursuit, there existed sufficient evidence of the officers' negligence to require that a jury weigh the facts (*Dillenbeck* v. *City of Los Angeles* (1968) 69 Cal.2d 472, 478 [72 Cal.Rptr. 321, 446 P.2d 129]; *Peerless Laundry Serv.* v. *City of Los Angeles, supra,* 109 Cal.App.2d 703, 707; *Grant* v. *Petronella* (1975) 50 Cal.App.3d 281 [123 Cal.Rptr. 399]; *Torres* v. *City of Los Angeles, supra,* 58 Cal.2d 35), and any doubts as to the propriety of granting a summary judgment should have been resolved in favor of the party opposing the motion. (*Blaustein* v. *Burton* (1970) 9 Cal.App.3d 161, 176 [88 Cal.Rptr. 319]; *Stationers Corp.* v. *Dun & Bradstreet* (1965) 62 Cal.2d 412 [42 Cal.Rptr. 449, 398 P.2d 785].)

The judgment for defendant County of Sacramento is reversed and judgment for the individual defendants is affirmed. Plaintiffs shall recover their costs from the County of Sacramento; the individual defendants shall recover their costs from plaintiffs.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.