Filed 1/6/14  Maleki v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MAHNOOSH MALEKI et al., | B246063 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC461629) |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Soussan G. Bruguera, Judge.  Reversed and remanded.

Khashayar Law Group, Daryoosh Khashayar for Plaintiff and Appellant Mahnoosh Maleki.

Semnar Law Firm, Babak Semnar for Plaintiff and Appellant Mehdi Maleki.

Office of County Counsel, Ruben Baeza, Jr., Assistant County Counsel, Adrian G. Gragas, Principal Deputy County Counsel, Jessie Lee, Associate County Counsel, for Defendants and Respondents.

_____

Mahnoosh and Mehdi Maleki filed suit after colliding with a sheriff's car in an intersection, when the deputy drove through a red light while responding to a radio call. Relying on provisions in the Vehicle Code, the trial court granted nonsuit at the close of plaintiffs' case against the County of Los Angeles and Deputy David Waishwile.[1] We reverse. The trial court improperly weighed conflicting evidence and judged witness credibility, functions reserved to the jury. When viewed in the light most favorable to the plaintiffs, the evidence could support a jury verdict for plaintiffs.

## FACTS

### *Plaintiffs' Testimony*

Eighty-four-year-old Mehdi Maleki was a passenger in a car driven by his sister, Mahnoosh Maleki. As they drove into an intersection on a green light, there was a truck on their right side. The radio in the Malekis' car was turned off. They were not conversing. The windows were closed. Mr. Maleki did not hear a siren. In the intersection, their car was hit by a police car, which Mr. Maleki did not see before the collision. Less than five seconds lapsed from the time the light turned green until the accident.

Mahnoosh Maleki testified that she was driving north on Parkway Calabasas in the left lane. She passed a semi truck on her right that was not moving; she thought it was making a right turn. Then, "as soon as I get into the intersection, boom. Accident happened." The green light was in her favor as she drove into the intersection. Prior to the collision, Ms. Maleki did not hear a siren nor see emergency lights or a patrol car.

Ms. Maleki was driving the speed limit (40 or 45 miles per hour) or slower when the accident happened. She did not see hazard lights on the truck, and did not recall whether cars driving the opposite direction from her on Parkway Calabasas were stopped. The accident occurred "in a split second." Afterward, the deputy involved in the accident came up to Ms. Maleki and said, "I'm sorry. It's my fault."

---

[1]     All unlabeled statutory references in this opinion are to the Vehicle Code.

## Defendant Waishwile's Testimony

Deputy Waishwile has been with the Sheriff's Department for seven years, including three and a half years on patrol. At 6:30 p.m. on August 13, 2010, while on patrol with a ride-along passenger, Waishwile received a call from dispatch saying that smoke was coming from a house two to five minutes away. He then drove up Parkway Granada toward Parkway Calabasas, without activating his lights or siren.

Waishwile described three types of dispatch calls: (1) emergency calls (such as a robbery in progress) that call for immediate activation of siren and lights; (2) priority calls (such as a burglar alarm) in which "it's customary not to have your red light and siren on as you're responding"; and (3) routine calls. He said, "I've handled calls of houses on fire before. It's a really dangerous and life-threatening situation." In his mind, it was an emergency call. As a result, Waishwile believed that at an intersection, he should activate his lights and siren and clear the intersection to arrive at the call expeditiously.

As Waishwile approached Parkway Calabasas, he faced a red stoplight. At a distance of about 25 to 50 yards from the intersection, Waishwile activated his emergency lights; at 10 to 25 yards from the intersection, he activated his siren. He has four options for the siren: (1) an automatic continuous wail; (2) an automatic yelp; (3) a manual wail; and (4) an air horn. On this occasion, Waishwile used the manual wail switch, which he held with his right hand for "a second or two, let it go briefly, a fraction of a second. Held it again for a second or two, let it go for a fraction of a second." He activated the siren approximately five times and came to a stop as he got to the intersection, waiting for nearby cars to come to a complete stop.

On Waishwile's left, at the intersection, was an 18-wheel semi truck, moving in the right lane on northbound Parkway Calabasas. When the truck came to a stop, Waishwile's view of the other northbound lane was partially blocked by the truck. He paused for three to six seconds, then entered the intersection on the red light.

Waishwile proceeded slowly into the intersection, continuously looking in all directions. As he neared the middle of the intersection, he was looking to the right for

3

southbound traffic on Parkway Calabasas. He heard the truck honk. Just then, his ride-along passenger said, "Watch out." Waishwile turned his head to the left and saw a northbound black Mercedes approaching. Within two or three seconds, the Mercedes struck the front of the patrol car at the driver's side front tire. Waishwile did not recall making an evasive maneuver to avoid a collision.

<em>Independent Eyewitness Testimony</em>

Three independent eyewitnesses described the accident.

Louis Vasquez is a security guard at an entry booth for a residential community at the intersection of Parkway Calabasas and Parkway Granada, where the accident occurred at 6:32 p.m. on August 13, 2010. The window of his office was half open. He had an unobstructed view of the accident from his desk.

Vasquez saw a sheriff's car stopped at a red light at the intersection. When he first looked at the patrol car, the emergency lights and siren were not activated. About 20 seconds later, the deputy's red and blue emergency lights went on, and he "put his siren on and he yelp[ed] it, and he moved out once, twice, and then on the third time is when he started to accelerate. That's when the black Mercedes came right down and hit it." The patrol car was approaching the middle of the intersection when it began to accelerate. Vasquez added, "I saw him accelerate into the intersection with the siren." The accident occurred "fast," within two or three seconds after the patrol car accelerated.

Vasquez saw the officer and a passenger in the patrol car looking both ways for three to five seconds as they inched into the intersection with the emergency lights and siren activated. The siren was "fairly loud," or at least loud enough to grab Vasquez's attention. Stopped in the right-hand turn lane was a big supermarket semi truck that blocked the officer's view of oncoming traffic on Parkway Calabasas. The black Mercedes came alongside of the semi truck, in a northerly direction, and entered the intersection on a green light. The two cars collided. The patrol car did not make any maneuvers to avoid the accident. Vasquez estimated that the length of time from when the siren was activated to the moment of the collision was five to 10 seconds.

4

Eyewitness Joseph Rinck was traveling southbound on Parkway Calabasas and stopped at a red light; he was the first car in the lane closest to the turn lane. When Rinck initially noticed the patrol car on Parkway Granada, it was stopped and its emergency lights and siren were not activated. Within 30 to 40 seconds, Rinck saw the emergency lights activate, though "I don't recall hearing the sirens." Rinck stayed where he was, although he had a green light, because he saw the emergency lights.

Rinck observed a black Mercedes traveling northbound on Parkway Calabasas, as well as a semi truck in the far right lane. As the Mercedes came down the hill, the light turned green, but the semi truck did not move into the intersection. The patrol car crossed Parkway Calabasas against the red light and collided with the Mercedes in the middle of the intersection.

Rinck estimated that the emergency lights were on for about five to 10 seconds before the collision. Rinck thought the officer entered the intersection in a continuous motion "pretty fast"—about 10 or 15 miles per hour—rather than creeping slowly. Rinck did not know if the officer turned his head left or right or whether there was a car horn before the accident. The collision occurred about 10 seconds after the deputy began to enter the intersection.

Eyewitness Mardiros Mouradian, a Ralphs delivery truck operator, was driving his 68- to 72-foot-long rig northbound on Parkway Calabasas on August 13, 2010. As Mouradian approached Parkway Granada, he noticed from about 200 yards away a police car stopped in the left-hand turn lane of Parkway Granada, with its emergency lights on and a siren going on and off. The siren made a deep "honk honk" sound that Mouradian heard clearly, though his window was closed.

Mouradian slowed down even though he had a green light. He saw two cars coming up behind him, so he turned on his hazard lights to give warning to the approaching cars. One of the cars slowed and stopped. The other car was a black Mercedes, which did not slow or stop. He saw the deputy, who was about 20 feet away, look in both directions for oncoming traffic while driving "very, very slow." Mouradian honked his horn to warn the deputy: the deputy looked at Mouradian, who was indicating

5

to stop, but just then the collision occurred. Only two or three seconds elapsed from the time the deputy entered the intersection with the siren on until the impact. Mouradian heard skidding and saw the Mercedes driver try to go left to avoid the collision. He estimated the car's speed at about 40 miles per hour.

<em>Investigating Deputy Bunch's Testimony</em>

Deputy Sheriff Brent Bunch works in the traffic unit in Lost Hills. During his seven years as a deputy, he has responded to over 2,000 auto accidents and has been responsible for investigating 450 to 500 collisions, which requires him to determine the cause of the accident. Bunch was called to the scene of the accident involving plaintiffs and Deputy Waishwile.

Bunch interviewed witnesses as part of his investigation. The truck driver and a husband and wife who were behind the truck told Bunch that they heard a siren. They stopped but plaintiffs' car went through the intersection without slowing or stopping and collided with the patrol car.[2] Eyewitness Rinck told Bunch "he was unsure" whether he heard a siren. A ride-along passenger in the patrol car told Bunch that Waishwile slowly drove into the intersection, lane by lane, with lights and siren on, and heard the truck driver blast his horn. There were no skid marks before the point of impact, indicating no attempt by the Mercedes driver to stop or avoid the broadside collision.

Bunch interviewed Deputy Waishwile, who stated that "he was responding to a priority call." Waishwile did not tell Bunch that he was responding to an emergency call. Waishwile pressed his "yelp button" as he entered the intersection, while creeping past the semi truck. Waishwile heard his ride-along passenger say "Watch out" and saw a black car coming.

Bunch determined that plaintiffs' car failed to yield to an emergency vehicle, and violated the Vehicle Code by having a handicap placard dangling from the rearview mirror, impairing visibility. Bunch also determined that the Mercedes proceeded at an

---

[2]     The couple behind the truck thought that the patrol car drove through a green light.

unsafe speed for the conditions, because other drivers slowed for the patrol car. He did not ticket Ms. Maleki because "she seemed to be having a bad enough day as it was."

*Plaintiffs' Expert Witness*

Plaintiffs called to the stand William Rahn, who worked as a deputy for 28 years at the Riverside County Sheriff's Department and is now a private investigator. He was a field training officer for over seven years, and made sure that new employees understood "Code 3" emergency procedures. Rahn is familiar with the Los Angeles County Sheriff's Department procedures relating to "Code 3."

At this point, the trial court called the attorneys into chambers to ask about the qualifications of the witness. Plaintiffs' counsel represented that Rahn has reviewed the codes and procedures for Riverside and Los Angeles Counties, and they are identical. The court decided that Rahn is not qualified to testify about Los Angeles procedures and Riverside procedures are not relevant. Plaintiffs also proposed to have Rahn testify that Deputy Waishwile did not use due care because the semi truck was blocking plaintiffs' perception of the patrol car's lights and siren. The court announced, "I've made a legal decision that he will not be able to testify. His testimony will not be necessary."

## PROCEDURAL HISTORY

After plaintiffs' government claim was denied on March 16, 2011, they filed a negligence suit against the County of Los Angeles, the Sheriff's Department, and Deputy Waishwile. The case was tried by a jury in June 2012. When plaintiffs rested, the defense made an oral motion for nonsuit on the grounds that there is no evidence of negligence and the sole cause of the accident was Ms. Maleki's failure to yield to emergency lights and sirens, in violation of the Vehicle Code. Further, the deputy proceeded with reasonable care and slowly entered the intersection. Plaintiffs opposed the motion, arguing that the eyewitness testimony showed that Deputy Waishwile did not act reasonably or carefully, presenting a triable issue for the jury. Further, the jury could decide that the emergency lights were not visible and the siren was only briefly activated.

## THE TRIAL COURT'S RULING

The motion for nonsuit was granted on June 28, 2012. On December 19, 2012, the trial court entered judgment for defendants. The court found that plaintiffs' evidence is insufficient for a jury to find in their favor, entitling defendants to judgment as a matter of law. First, the court determined that Deputy Waishwile is absolutely immune from liability: he reasonably believed an emergency existed because someone reported seeing smoke, and the accident occurred while he was responding to the perceived emergency. Second, the court concluded that Waishwile did not breach a duty of care because he looked both ways and slowly entered the intersection before accelerating. Plaintiffs did not see emergency lights or hear a siren, even though other witnesses did. There was no evidence presented regarding the Sheriff's Department policy and procedures. Third, Mahnoosh Maleki caused the accident and violated the Vehicle Code by failing to yield to emergency lights and a siren. Plaintiffs promptly appealed from the judgment.

## DISCUSSION

### 1. Standard of Review

After a plaintiff's presentation of evidence, the defendant may move for nonsuit to challenge the sufficiency of the evidence. (Code Civ. Proc., § 581c; *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117.) Motions for nonsuit pose issues of law for the trial court and the reviewing court; therefore, we review a grant of nonsuit de novo. (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 43.)

"Because a grant of the motion serves to take a case from the jury's consideration, courts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper. The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.] [¶] In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the

evidence in plaintiff['s] favor . . . .'" (*Campbell v. General Motors Corp.*, *supra*, 32 Cal.3d at pp. 117-118; *O'Neil v. Crane Co.*(2012) 53 Cal.4th 335, 347.)

## 2. <u>Governmental Liability and Immunity Laws Concerning Emergency Vehicles</u>

Section 17004 immunizes individual law enforcement officers for deaths or injuries "resulting from the operation, in the line of duty, of an authorized emergency vehicle *while responding to an emergency call* . . . or when responding to but not upon returning from a fire alarm or other emergency call." (Italics added.) It is a question of fact for the jury whether an officer "was responding to an 'emergency' call at the time that the accident happened," even if the officer testified that "'All calls are urgent.'" (*Hopping v. City of Redwood City* (1936) 14 Cal.App.2d 360, 364.) Nearby drivers must yield to emergency vehicles using a siren and red lights visible from a distance of 1,000 feet to the front. (§ 21806, subd. (a)(1).)

Though law enforcement officers may be immune under section 17004, their employer does not enjoy derivative immunity. (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 519-520; *Brummett v. County of Sacramento* (1978) 21 Cal.3d 880, 883-885 (*Brummett*).) "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment." (§ 17001.)

To avoid liability, the public entity must show that its employee acted "with due care." (*Brummett*, *supra*, 21 Cal.3d at p. 886.) An emergency vehicle driver is exempt from following traffic rules if the vehicle is being driven "in response to an emergency call" and he "sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians." (§ 21055, subds. (a)-(b).) However, "Section 21055 does not relieve the driver of a vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor protect him from the consequences of an arbitrary exercise of the privileges granted in that section." (§ 21056.)

9

The operative standard is, "what would a reasonable, prudent emergency driver do under all of the circumstances, including that of emergency" in order to "not impose upon others an unreasonable risk of harm." (*Torres v. City of Los Angeles* (1962) 58 Cal.2d 35, 47, 51.) "'"[D]ue regard" for the safety of others means that he should, by suitable warning, give others a reasonable opportunity to yield the right of way.'" (*Reed v. Simpson* (1948) 32 Cal.2d 444, 450.) Giving a suitable warning depends on the surrounding circumstances—as described by eyewitnesses—to determine whether there was an arbitrary exercise of the officer's traffic privileges. (*Id.* at pp. 450-451. Accord: *Raynor v. City of Arcata* (1938) 11 Cal.2d 113, 117-118; *Duff v. Schaefer Ambulance Service, Inc.* (1955) 132 Cal.App.2d 655, 685.)

An emergency vehicle driver's use of due care "presents a question of fact for the jury. [Citation.] If the circumstances permit a reasonable doubt whether defendants' conduct violated the boundaries of due care, the doubt must be resolved as an issue of fact by the jury rather than of law by the court." (*Brummett*, *supra*, 21 Cal.3d at p. 887.) In *Brummett*, two police cars traveling at 80 to 90 miles per hour while chasing a robbery suspect struck plaintiffs' vehicle in an intersection. (*Id.* at p. 882.) One of the officers acknowledged that under police practices he should cease pursuit "'if there was a problem'" due to traffic conditions. (*Id.* at p. 887.) "Based upon the evidence in the record concerning the speed of the officers' cars, the vehicular traffic at the time of the accident, one officer's lack of awareness of the color of the light at the intersection, and their instructions on when to discontinue pursuit, there existed sufficient evidence of the officers' negligence to require that a jury weigh the facts." (*Ibid.*)

In another example, a city patrol car was chasing a motorist who "rather stupidly decided to continue running red lights in the hopes of getting away." (*City of Sacramento v. Superior Court* (1982) 131 Cal.App.3d 395, 399.) The fleeing motorist collided in an intersection with a CHP officer in a cruiser, who was unaware of the pursuit. (*Ibid.*) The CHP officer sued for his injuries. There was conflicting evidence as to whether the police activated their red lights and siren and, if so, at which point. (*Id.* at p. 402.) The individual officers were immune as a matter of law under section 17004. (*City of*

10

*Sacramento*, at p. 400.) However, their employer was not entitled to summary judgment because "a jury could well conclude that the officers are negligent in failing to flash their red lights or sound their siren in order to alert other innocent parties to the approaching danger" and enable the CHP driver to take evasive action. (*Id.* at pp. 405-406. Accord: *Cruz v. Briseno* (2000) 22 Cal.4th 568, 572-574 [officer immunized during "immediate pursuit" of a lawbreaker, but his employer could be liable if he failed to act with due care]; *City of San Jose v. Superior Court* (1985) 166 Cal.App.3d 695, 697, 701 [city's liability for a fatal accident arising from its officers' high-speed pursuit in a residential neighborhood presents a question of fact on the issue of negligence].)

### 3. <u>Nonsuit as to Deputy Waishwile</u>

Plaintiffs argue that Deputy Waishwile is not immunized from liability because he was not "responding to an emergency call" within the meaning of section 17004. "Whether a vehicle is driven in response to an emergency call depends on the nature of the call received and the situation as presented to the mind of the driver and not upon whether there is an emergency in fact. [Citations.] The driver, of course, should have reasonable grounds to believe that there is an emergency." (*Gallup v. Sparks-Mundo Engineering Co.* (1954) 43 Cal.2d 1, 5.)

"[T]he controlling thing is the nature of the call as it was communicated to the driver" of the emergency vehicle. (*Head v. Wilson* (1939) 36 Cal.App.2d 244, 248, 251.) Thus, if an ambulance driver was instructed by his employer that all calls from an institute for alcoholics should be treated as emergencies and the log book completed before a collision in an intersection showed an "E" for emergency, the jury could reasonably find that the driver believed he was responding to an emergency call. (*Gallup v. Sparks-Mundo Engineering Co.*, *supra*, 43 Cal.2d at pp. 6-8.) A conflict in the evidence as to whether there was an emergency call presents a jury question. (*Washington v. City & County of S.F.* (1954) 123 Cal.App.2d 235, 241.)

There is a conflict in the evidence as to whether Deputy Waishwile believed, at the time, that he was responding to an emergency call. When interviewed by Deputy Bunch soon after the accident, Waishwile stated that "he was responding to a priority call." He

11

did not tell Bunch that he was responding to an emergency. At trial, Waishwile testified that in his mind, it was an emergency call; however, he drove down Parkway Granada after receiving the dispatch call without illuminating his lights or sounding a siren, though emergencies call for immediate activation of those devices. Given the opportunity, plaintiffs could have argued—and the jury could have believed—that Waishwile's trial testimony was an after-the-fact rationalization to avoid liability, and that his initial reaction to the call and statements to the investigator are more credible because Waishwile did not know (at that point) that he would be personally sued.

It bears repeating that on a motion for nonsuit, the court cannot consider witness credibility and must indulge every legitimate inference in plaintiffs' favor. (*Campbell v. General Motors Corp.*, *supra*, 32 Cal.3d at p. 118.) The jury could have decided that Waishwile's trial testimony is not credible: just because he *said* something about his state of mind does not mean that the jury was obliged to *believe* it. The trial court invaded the province of the jury by declaring that Deputy Waishwile's testimony conclusively establishes his reasonable belief that there was an emergency call. The jury could have rejected that testimony in its entirety. Or the jury could have credited statements Waishwile made at the time of the accident, which did not mention an emergency. Nonsuit was improperly granted as to Waishwile.

## 4. **Nonsuit as to the County of Los Angeles**

To avoid liability, the County must establish that its employee Deputy Waishwile acted "with due care" like "'a reasonable, prudent emergency driver,'" given all of the circumstances, to be exempt from following traffic rules. (*Brummett*, *supra*, 21 Cal.3d at p. 886; *Torres v. City of Los Angeles, supra,* 58 Cal.2d at p. 51.) The exercise of due care generally presents a jury question. (*Brummett*, at p. 887.) This case is no exception to the rule.

There is a conflict in the evidence with respect to when Deputy Waishwile sounded a siren and activated his emergency lights. He testified that he did so when he was 25 to 50 yards (lights) and 10 to 25 yards (siren) from the intersection; however, two eyewitnesses agreed that Deputy Waishwile's vehicle was already stopped at the red light

12

when it began displaying lights or sounding a siren. This is a significant discrepancy. If the jury were to believe that Waishwile drove half the length of a football field with his emergency lights on and a quarter of that distance with his siren on as well, it might decide that Ms. Maleki should have seen or heard the patrol car. On the other hand, if the jury were to believe the eyewitnesses, it might find that Waishwile imprudently accelerated into the intersection with so little warning that someone driving the speed limit through a green light, alongside a 70-foot-long truck, could not possibly register the danger and yield the right of way in time.

The issue was whether Waishwile acted in a reasonable and prudent manner under the circumstances. One circumstance was that the siren "yelped" for only five to 10 seconds according to witness Vasquez. This is consistent with Waishwile's testimony that he manually held down the siren approximately five times, for a second or two each time. On the other hand, witness Mouradian, who was closest to the deputy's car, described two or three seconds of siren before the collision. The other critical circumstance was that Mouradian's semi truck prevented Ms. Maleki and Waishwile from seeing each other. According to eyewitnesses Vasquez and Rinck, who had an unobstructed view, the patrol car briefly deployed its emergency features, moved into the intersection, then started to accelerate, at which time Ms. Maleki came alongside the semi and entered the intersection on a green light at the speed limit of 40 or 45 miles per hour. According to Waishwile, he was looking to his right at the southbound traffic as he crossed the northbound lane of traffic, and did not look left until truck driver Mouradian honked at him. By then, it was too late to avoid a collision.

Based on the testimony, neither this Court nor the trial court can determine, as a matter of law, that Waishwile drove in a reasonable and prudent manner under all the circumstances, giving Ms. Maleki "'a reasonable opportunity to yield the right of way.'" (*Reed v. Simpson*, *supra*, 32 Cal.2d at p. 450.) If the eyewitness testimony is credited (as it must on nonsuit), Ms. Maleki could not have seen the deputy activate his lights, due to the bulk of the semi truck between her and the patrol car stopped at the red light. A jury could find that it was not reasonable to accelerate into an intersection on a red light after

13

using the siren for a few seconds, when the deputy could not see through or around the truck blocking his view of oncoming traffic.

Here again, the trial court invaded the province of the jury, whose job is to decide what is reasonable and what is not. (*Brummett*, *supra*, 21 Cal.3d at p. 887.) The court weighed conflicting evidence, which is not allowed on nonsuit. (*Campbell v. General Motors Corp.*, *supra*, 32 Cal.3d at pp. 117-118.) With respect to whether Ms. Maleki failed to yield to an emergency vehicle, the jury could consider that Deputy Bunch did not cite Ms. Maleki for violating the Vehicle Code, and that Deputy Waishwile apologized for causing the accident. Further, even if a Vehicle Code violation were found, it could serve to establish Ms. Maleki's negligence, thereby reducing the damages after the jury assesses the comparative degree of fault. The trial court improperly granted nonsuit as to the County of Los Angeles.

## 5. **Other Rulings**

Appellants question the propriety of the trial court's rulings regarding the exclusion of their expert witness, William Rahn, and the court's refusal to allow them to cross-examine Deputy Bunch regarding emergency dispatch calls. Further, they challenge the trial court's decision to treat appellants' two attorneys as one during questioning. We need not reach the merits of these rulings because we have determined that nonsuit was improperly granted and a new trial must be conducted.[3]

---

[3]     Plaintiffs may make a peremptory challenge if the case is assigned to the same trial judge, and seek a new trial before a different judge. (Code Civ. Proc., § 170.6, subd. (a)(2); *Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 556; *Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762, 764-766.)

## DISPOSITION

The judgment is reversed and the case is remanded for a new trial. Appellants are entitled to recover their costs on appeal by way of a motion in the trial court.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

15