Filed 8/6/25  Liu v. County of San Bernardino CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JIAQUIN LIU et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>COUNTY OF SAN BERNARDINO et al.,<br><br>  Defendants and Respondents. | D084508<br><br><br>(Super. Ct. No. CIVSB2105473) |


APPEAL from a judgment of the Superior Court of San Bernardino, John M. Pacheco, Judge.  Reversed.

Day, Day & Brown, Trevor J. Herrera, and Alan C. Brown for Plaintiffs and Appellants.

Fagen Friedman & Fulfrost, Milton E. Foster III, and Jennifer Oliva for Defendants and Respondents.


Jiaquin Liu's car struck a police SUV driven by Sheriff's Deputy Daniel Hernandez after he crossed through an intersection in front of Liu on a red light en route to an emergency.  Liu and his passenger, Liu's 17-year-old

nephew, brought suit against Hernandez and his employer, the County of San Bernardino, asserting Hernandez was negligent. Thereafter, the defendants successfully moved for summary judgment—Hernandez based on his governmental immunity and the County on the grounds that Hernandez was not negligent as a matter of law.

On appeal from the subsequent judgment, Liu and his nephew (collectively, Liu) argue the trial court erred because disputed facts remain as to whether Hernandez breached a duty of care by crossing the intersection on a red light without first ensuring there was no oncoming traffic. For the reasons set forth below, we agree with appellants that the County has not shown, as a matter of law, that Hernandez did not breach a duty of care owed to them. Accordingly, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On the morning of the accident, Liu was driving his nephew to school. Liu was driving an Infiniti SUV northbound on State Route 71 and was listening to the radio. He exited the freeway, and drove straight toward the intersection with Riverside Drive. The exit had two lanes and Liu was traveling in the left lane. As the right lane reached the intersection, it split into two lanes with the farthest right lane veering into a right turn. Liu saw two or three cars traveling ahead of him in the right turn lane. The signal facing Liu was green. To Liu's left was a concrete wall, supporting SR-71 above, that reached to the stopping, or limit, line for the intersection's signal.

---

[1] Consistent with our standard of review of orders granting summary judgment or summary adjudication, we recite the historical facts in the light most favorable to Liu as the nonmoving party. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*); *Light v. Dept. of Parks & Recreation* (2017) 14 Cal.App.5th 75, 81.)

2

The wall blocked the view of oncoming traffic from Riverside Drive to Liu's left.

At the same time, Hernandez was traveling eastbound on Riverside Drive towards the same intersection. Hernandez was responding to an emergency call that an angry-looking man was wielding a baseball bat and looking into nearby cars. As Hernandez headed east towards the emergency, his patrol car's emergency lights were on and he was using the car's intermittent siren, which he activated by pressing the horn.

Just as Liu reached the intersection, Hernandez drove into the intersection on a red light. Liu, who was traveling about 30 miles per hour, struck the passenger side of Hernandez's patrol car. In his deposition, Liu testified he did not see Hernandez's car or hear a siren before the collision. The accident and moments preceding it were captured by a dash camera installed on Liu's windshield.

In his declaration submitted in support of the motion for summary judgment, Hernandez stated that as he approached the intersection, he stopped at the red light, "looked in all directions, and waited enough time … to conclude that it was safe to proceed through the red traffic signal." He then "proceeded through the intersection with [his] red and blue emergency lights still illuminated as well as an intermittent siren." Hernandez further stated that, "[a]t the time of the collision, I had my red and blue emergency lights illuminated as well as an intermittent siren activated." During his deposition, Hernandez explained he crept forward into the intersection, stopping two or three times before proceeding forward with his lights activated. He initially testified he could not recall if the siren was on when he entered the intersection, then later stated it was on.

After the accident, Liu filed suit against Hernandez and the County of San Bernardino asserting a claim for negligence against Hernandez directly, and a claim against the County for negligence based on Hernandez's negligence in the course and scope of his employment by the County. After conducting discovery, Hernandez and the County jointly moved for summary judgment. Hernandez asserted he was immune from liability under Vehicle Code section 17004.[2] The County argued it could not be held liable because Hernandez was not negligent as a matter of law.

Liu opposed the motion only with respect to the County's liability, arguing that whether Hernandez was negligent remained a question of fact for the jury. In support of his opposition, Liu submitted the declaration of an accident reconstruction expert, Robert Koetting, who opined that based on calculations he made using the dashcam video, Hernandez's SUV was traveling between 20 and 27 miles per hour at the time of the collision. Koetting also opined that at that speed, once Hernandez's SUV came into view beyond the concrete wall, Liu had insufficient time to take evasive action to avoid the collision.

In addition, Liu pointed to Hernandez's own deposition testimony that Hernandez could not recall whether he was pressing his horn to sound the intermittent siren before the collision and that "[g]iven the circumstances and incident that occurred, [Hernandez did]n't believe traffic was cleared" before he entered the intersection. Finally, Liu pointed to his own deposition

---

[2] Subsequent undesignated statutory references are to the Vehicle Code. Section 17004 provides: "A public employee is not liable for civil damages on account of personal injury to or death of any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call or when in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm or other emergency call."

4

testimony that he did not hear Hernandez's sirens, and that he could not see the patrol car until it was already in the intersection because of the concrete wall to his left.

With their reply brief, Hernandez and the County submitted evidentiary objections to two paragraphs in Koetting's declaration. They challenged Koetting's conclusion, contained in paragraph 9(a) of the declaration, that Hernandez did not operate the patrol car with due care by entering the intersection on a red light. The defendants argued Koetting improperly assumed Hernandez did not have the siren on when he entered the intersection and that Koetting's conclusion lacked foundation because he had "no personal knowledge and no evidence upon which to rely which would allow him to conclude when [Liu] should have heard the siren and reacted."

In addition, Hernandez and the County challenged Koetting's statement, contained in paragraph 9(b), that "Hernandez's speed of approximately 20 to 27 miles per hour … did not allow traffic northbound on the off-ramp sufficient time to avoid a collision." The defendants argued the statement should be excluded because it improperly assumed "Hernandez's speed and visibility [were] the only contributing factors to the collision," and also failed to consider Hernandez's siren. Hernandez and the County also asserted the statement lacked foundation because Koetting had no personal knowledge or evidence to allow him to draw such a conclusion.

After a hearing, the trial court issued a minute order granting the motion. The court also sustained Hernandez and the County's evidentiary objections to Koetting's declaration. The court concluded that Hernandez was immune from liability under section 17004. With respect to Liu's negligence claim against the County, the court concluded "no evidence has been submitted such that a jury could find that Deputy Hernandez acted

5

negligently." Thereafter, the court entered judgment in favor of the defendants.

Liu timely appealed from the judgment.

DISCUSSION

I

*Legal Standards*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) "A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. [Citation.] The burden of persuasion remains with the party moving for summary judgment. [Citation.] When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 (*Kahn*).)

If the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850.) "The plaintiff … shall not rely upon the allegations or denials of its pleadings to show that a triable issue of

6

material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

"We review the record and the determination of the trial court de novo." (*Kahn, supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler, supra*, 25 Cal.4th at p. 768.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra*, 25 Cal.4th at p. 850.)

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213.) In addition, applicable here, "section 21055 exempts authorized emergency vehicles from certain specified rules of the road under certain circumstances. A police vehicle is exempt from these rules of the road if it is being driven in response to an emergency call, while engaged in rescue operations, or is in the immediate pursuit of an actual or suspected violator of the law. The exemption under such circumstances applies '(b) If the driver of the vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians.' (Veh. Code, § 21055, subd. (b).) … When a driver of an emergency vehicle complies with section 21055, he is exempt from the

7

specified rules of the road, but not from the duty to drive with due regard for the safety of all persons using the highway. (Veh. Code, § 21056. See *Torres v. City of Los Angeles* (1962) 58 Cal.2d 35, 47.) Moreover, the driver is not immune from the consequences of an arbitrary exercise of the privileges granted in section 21055. (Veh. Code, § 21056.)" (*City of Sacramento v. Superior Court* (1982) 131 Cal.App.3d 395, 402 (*City of Sacramento*).)

"The effect of Vehicle Code sections 21055 and 21056 is: where the driver of an authorized emergency vehicle is engaged in a specified emergency function he may violate certain rules of the road, such as speed and right of way laws, if he activates his red light and where necessary his siren in order to alert other users of the road to the situation. In such circumstances the driver may not be held to be negligent solely upon the violation of specified rules of the road, but may be held to be negligent if he fails to exercise due regard for the safety of others under the circumstances. (See *Brummett v. County of Sacramento, supra*, 21 Cal.3d at p. 886.) Where the driver of an emergency vehicle fails to activate his red light, and where necessary his siren, he is not exempt from the rules of the road even though he may be engaged in a proper emergency function, and negligence may be based upon the violation of the rules of the road." (*City of Sacramento, supra*, 131 Cal.App.3d at pp. 402–403.)

"The purpose of Vehicle Code section 21055 is to avoid the presumption of negligence that arises from the violation of a safety rule or regulation. (See Evid. Code, § 669; 4 Witkin, Summary of Cal. Law [(8th ed. 1974) Torts,] § 533 ff., p. 2797 ff.) In the absence of the exemption provided by that section the driver of an emergency vehicle would be presumed negligent whenever an injury occurred due to the violation of one of the normal rules of the road. Moreover, in view of the limited nature of the type of evidence which may

8

rebut the presumption, the presumption would be tantamount to an irrebuttable presumption. (See Evid. Code, § 669.) If the driver complies with Vehicle Code section 21055, however, no presumption will arise and ordinary negligence principles apply." (*City of Sacramento, supra*, 131 Cal.App.3d at p. 403; see also *Torres v. City of Los Angeles, supra*, 58 Cal.2d at p. 51 ["the degree of care lawfully imposed upon the agents or the employees of a municipality is that care consistent with the exercise of ordinary prudence in all the prevailing circumstances, including those circumstances manifest at the time of an emergency call. The question to be asked is what would a reasonable, prudent emergency driver do under all of the circumstances, including that of the emergency"].)

Critically here, "[d]ue care as an element of negligence presents a question of fact for the jury. (4 Witkin, Summary of Cal.Law (8th ed. 1974) Torts, § 492, p. 2755.) If the circumstances permit a reasonable doubt whether defendants' conduct violated the boundaries of due care, the doubt must be resolved as an issue of fact by the jury rather than of law by the court." (*Brummett v. County of Sacramento* (1978) 21 Cal.3d 880, 887 (*Brummett*).)

II

*Analysis*

On appeal from the judgment, Liu asserts that triable issues of material fact remain because there is a dispute as to whether Hernandez sounded his patrol car's sirens before he entered the intersection, whether Liu heard the siren if it was sounded, and whether Hernandez sufficiently checked for oncoming traffic before entering the intersection. We agree with Liu that these questions were not resolved by the County's motion and should reach the trier of fact. As Liu argues, the trial court's order shows that the

9

court ignored evidence favoring Liu and focused only on the County's assertions that Hernandez was not negligent.

Specifically, the order states that the only evidence provided to show Hernandez breached his duty of care was "Koetting's conclusions regarding Liu's reaction time."[3]  This finding was error.  In addition to Koetting's declaration, Liu's opposition pointed to other facts surrounding the collision that drew into question whether Hernandez breached a duty of care. Specifically, Liu disputed the County's assertion that Hernandez "stopped at the limit line," "waited enough time for him to conclude that it was safe to proceed through the red traffic signal as there were no other vehicles in the intersection," and "proceeded with caution, driving at a speed of approximately 4 to 5 mph."

Liu pointed to the existence of the concrete wall obstructing both Liu and Hernandez's ability to see each other, which the dashcam video highlights; Hernandez's conflicting deposition and declaration testimony concerning how he approached and entered the intersection, particularly his admission that the intersection was obviously not clear at the time he entered it, and the dashcam video suggesting the same; Koetting's opinion based on the dashcam video that Hernandez was travelling between 20 and 27 miles per hour at the time of the collision, also suggesting he did not sufficiently check for the existence of oncoming traffic; and Hernandez's conflicting deposition testimony concerning whether his siren was on at the

---

[3]    The court also found, without explanation, that Koetting's assertion that the average person has a one to two second delay between observing a hazard and reacting to the hazard inadmissible.  As Liu points out, however, the County's evidentiary objections did not address the paragraph the court cited in its order containing this statement, 8(h), but rather challenged only two other paragraphs of Koetting's declaration, 9(a) and 9(b).

time he entered the intersection.[4]  These facts show that whether Hernandez exercised due care when entering into the intersection on a red light remained in dispute.

Similarly, the court found Hernandez "approached a red light, but checked to see if it was clear before proceeding and Liu cannot produce any evidence contradicting this."  As discussed in the preceding paragraph, however, other evidence in the record, including Hernandez's own deposition testimony, called into question whether Hernandez sufficiently checked to see if the intersection was clear.  Of note, Hernandez testified that he was very familiar with the intersection and travelled through it multiple times per day, and stated that "given the circumstances and incident that occurred, [he did]n't believe traffic was cleared" before he entered the intersection.

In concluding Hernandez was not negligent as a matter of law, the court also identified several "facts" in support of its conclusion.  The court stated, "Deputy Hernandez complied with the law and utilized his lights and sirens when responding to a Code 3 emergency;" "all the other vehicles with a green light stopped for the patrol unit;" "Deputy Hernandez was either driving 4–5 mph or up to 27 mph where the speed limit is 35 or 40 mph–thus he was not speeding;" "Liu's view was obstructed by a concrete wall that he himself says blocked him from seeing Deputy Hernandez;" and "Liu crashed into Deputy Hernandez."

None of these so-called "facts," however, supported the court's finding that Hernandez was not negligent as a matter of law, nor did they resolve the fundamental question of whether Hernandez breached his duty of care.

---

[4]     Hernandez first testified that he could not recall whether he activated the intermittent siren.  After a break, he testified that he did activate his siren before entering the intersection and that it was on at the time of the collision.

While it is correct that Hernandez could drive through the red light since he was responding to an emergency, he was not relieved of his obligation to enter the intersection with reasonable caution under the circumstances. (See *City of Sacramento, supra*, 131 Cal.App.3d at p. 403.) Likewise, whether the cars in front of Liu were stopped in the right turning lane, the speed at which Hernandez entered the intersection, and the existence of the obstructive wall, did not establish Hernandez was not negligent.[5] Rather, they are factors for the jury's consideration in evaluating whether Hernandez acted with sufficient caution. (See *Brummett, supra*, 21 Cal.3d at p. 887 ["If the circumstances permit a reasonable doubt whether defendants' conduct violated the boundaries of due care, the doubt must be resolved as an issue of fact by the jury rather than of law by the court."].)

Based upon the evidence in the record concerning the speed of Hernandez's patrol car, the existence of the concrete wall obstructing the drivers' view of the traffic approaching the intersection, and the question of whether the patrol car's sirens were on, "there existed sufficient evidence of [Hernandez's] negligence to require that a jury weigh the facts [citations], and any doubts as to the propriety of granting a summary judgment should have been resolved in favor of the party opposing the motion." (*Brummett, supra*, 21 Cal.3d at p. 887.)

---

[5] The dashcam video shows cars stopped in the right lane, but it is not clear whether they are stopped because of Hernandez's patrol car or as a result of traffic in the turning lane in front of them preventing forward travel.

## DISPOSITION

The judgment is reversed.  Appellants are awarded the costs of appeal.


McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.